IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Herman F. Rivers, Jr.,  )
    Plaintiff,  )
  )
v.  )    1:11cv644 (CMH/TRJ)
  )
Donald R. Hodge, Sr., et al.,  )
    Defendants.  )

MEMORANDUM OPINION

    Herman F. Rivers, Jr., was a Virginia inmate when he filed this pro se civil rights action, pursuant to 42 U.S.C. § 1983, alleging a host of constitutional violations during his confinement at the Riverside Regional Jail ("RRJ"). Plaintiff subsequently noticed a change of address to a private residence in Richmond. Because the initial complaint consisted of 126 handwritten pages that set out events in chronological fashion, plaintiff was directed to complete and file a form § 1983 complaint in compliance with Fed. R. Civ. P. 10(b) and 8(a) within thirty (30) days. Plaintiff also was required to submit an updated application to proceed in forma pauperis, to reflect his current circumstances. When it appeared that plaintiff had failed to comply with those instructions, the action was dismissed without prejudice by Order dated December 1, 2011. Plaintiff subsequently moved for reconsideration, and provided exhibits to support his explanation that he delivered his amended complaint to the Clerk's Office of the Richmond Division of the Court on November 10, 2011. For unknown reasons, the amended complaint was not placed on the docket of the Court until December 29, 2011, after the case had been dismissed. Under such circumstances, plaintiff's Motion for Reconsideration was granted, and the case was reopened. Because plaintiff's updated in forma pauperis request was lacking in

meaningful detail, he was required to submit a standard form Request to Proceed in Forma Pauperis by October 7, 2012, and he complied with those directions. After careful review of the amended complaint, plaintiff's claims must be dismissed as unexhausted pursuant to 42 U.S.C. § 1997e(a) as unexhausted, and alternatively pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[1] Plaintiff's application to proceed in forma pauperis accordingly will be denied, as moot.

## I. The Amended Complaint

Plaintiff's amended complaint consists of the form § 1983 complaint he was instructed to file, with forty (40) additional pages attached. Plaintiff separates his allegations into 57 "complaints," or claims, and he names twelve (12) officials of RRJ as defendants. The claims can be briefly summarized as follow:

(A) Claims 1 - 6: denial of plaintiff's rights of access to the courts.

(B) Claims 7 - 37, 43: denial of placement in RRJ's work release program, and interference with plaintiff's efforts to remain self-employed.

(C) Claims 37 - 40, 65- 67: lack of due process in disciplinary proceedings.

---

[1] Section 1915A provides:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

(D) Claims 41-42, 47-49: verbal abuse and harassment.

(E) Claims 45-46, 52-64: deliberate indifference to serious medical needs.

(F) Claims 50-51: interference with mail.

As to all of his claims, plaintiff seeks injunctive relief prohibiting RRJ from continuing the practices he challenges, as well as an award of $1 million in compensatory and punitive damages from each defendant.

**II. Standard of Review**

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative

3

level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

### III. Analysis

There are a number of reasons why plaintiff's amended complaint is subject to dismissal, as follow:

A. <u>Plaintiff's Claims are Unexhausted</u>

At the outset, it appears that plaintiff's amended complaint as a whole is subject to dismissal for his failure to exhaust administrative remedies as to his claims. Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 92 (2006) (requiring complete exhaustion of correctional facility administrative remedies). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, as has been recognized previously in this district, "the PLRA amendment made [it] clear that exhaustion is now mandatory." Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D. Va. 1999) (Ellis, J.); see also, Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy or effective. Porter, 534 U.S. at 524. Moreover, an inmate must exhaust administrative remedies even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. Davis v. Stanford, 382 F.Supp.2d 814, 818 (E.D. Va. 2005) (Hilton, J.), aff'd, 127 Fed. App'x 680 (4th

4

Cir. May 10, 2005).

In Virginia, where an inmate is confined in a local jail like RRJ, full exhaustion of a claim requires that he must file a grievance, receive a response to the grievance and, if unsatisfactory, pursue it through all available levels of appeal before presenting the claim in federal court. Here, plaintiff states on the face of the amended complaint that RRJ has a grievance procedure which requires a prisoner to submit an inmate request to be provided with a grievance form. Plaintiff asserts that "99.9% of [his] request[s] were denied." Am. Compl. at 4. At another point, plaintiff explains that after requesting a grievance form, an inmate "then [must] talk[] with up to two people in the chain of command who deny 99% of the request. [sic]" Am. Compl. at 8. Plaintiff states that although he has the inmate request forms he filed in his possession, he has no access to a copy machine so he could not provide them to the Court. Id. Because it thus appears that plaintiff did no more than file inmate requests as to his claims, he failed to follow the mandatory requirement of fully and properly exhausting his claims, so they must be dismissed pursuant to § 1997e. Porter, 534 U.S. at 532.[2]

B. <u>Plaintiff's Claims for Injunctive Relief are Moot</u>

In all of his claims, plaintiff seeks "a preliminary and permanent injunction" to remedy the policy or deprivation plaintiff challenges, on behalf of himself and "all inmates" at RRJ. Since plaintiff is no longer confined at RRJ, his prayers for injunctive relief on his own behalf

---

[2] It is true that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of [the administrative remedy]." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). If plaintiff here is attempting to bring himself within this exception, because his references to having his attempts thwarted by unnamed RRJ personnel are no more than conclusory and generalized, and because he has failed to submit copies of the inmate request forms he allegedly retained, his argument is not persuasive.

5

are now moot. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the out-come." Powell v. McCormack, 395 U.S. 486, 496 (1969). Where an inmate challenges prison policies or conditions, his transfer or release moots his claims for injunctive and declaratory relief from those policies or conditions, even if his claims for damages survive. See, e.g., Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007), cert. denied, 128 S. Ct. 2056 (2008) (appeal from denial of a First Amendment challenge to ban on maximum security inmates' receipt of certain publications dismissed as moot following plaintiff's release); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (holding that a prisoner's transfer mooted claims for declaratory and injunctive relief). The exception to the mootness doctrine of cases which are capable of repetition, yet evading review, Spencer v. Kemna, 523 U.S. 1, 8 (1998); Leonard v. Hammond, 804 F.2d 838, 842 (4th Cir. 1986) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)), does not apply in such instances, because once a prisoner is released from custody the challenged policies or conditions will never again apply to him "save some serious misstep on his part." Incumaa, 507 F.3d at 282.

As to plaintiff's attempt to seek injunctive relief on behalf of "all inmates" at RRJ, he has no standing to make such a request. To state a civil rights claim, one must allege that he, himself, sustained a deprivation of a right, privilege, or immunity secured by the Constitution or federal law. See Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). To demonstrate standing, plaintiff must allege personal injury fairly traceable to defendant's allegedly unlawful conduct and likely to be redressed by requested relief. See Allen v. Wright, 468 U.S. 737, 751 (1984); Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 472 (1982). Here, then, to the extent that plaintiff alleges that defendants' actions have

negatively impacted inmates other than himself, he has no standing to make such claims, and they are subject to dismissal for failure to state a claim pursuant to § 1915A.

C. Plaintiff's Allegations State No Claims for Relief

Even if plaintiff's claims had been administratively exhausted, his substantive allegations fail to state claims on which relief could be granted.

(1) Denial of Access to Law Library

In claims 1 through 6, plaintiff alleges that his right of access to the law library at RRJ was compromised when an inmate request to visit the law library on 11/3/2010 was denied, Am. Compl. at 8; when inmate requests to get documents and books from the library were denied, Am. Compl. at 9 - 10, and when his attempts to grieve the situation became "a vicious circle." Am. Compl. at 10 -11. Inmates have a right to meaningful access to the courts, which "can be satisfied either by providing inmates with adequate law libraries or with adequate assistance from persons trained in the law." Hause v. Vaught, 993 F.2d 1079, 1084 (4th Cir. 1993) (citing Bounds v. Smith, 430 U.S. 817, 822 (1977)). To state a claim for denial of access to the courts, plaintiff must establish that the law library or legal assistance was inadequate and that plaintiff suffered an "actual injury or specific harm." Id. at 1084-85; see, e.g., Strickler, 989 F.2d at 1382; Magee v. Waters, 810 F.2d 451, 452-53 (4th Cir. 1987). Actual injury requires that the inmate "demonstrate that his nonfrivolous, post-conviction or civil rights legal claim has been frustrated or impeded." Jackson v. Wiley, 352 F. Supp. 2d 666, 679-80 (E.D. Va. 2004). Here, plaintiff has stated no claim of denial of access to the courts for which § 1983 relief is available, because he has not alleged that he sustained an actual injury as a result of the incidents he describes. Specifically, he does not claim that he was prevented from meeting deadlines or otherwise

prejudiced in any pending litigation. Thus, even if plaintiff's claim of denial of access to the law library at RRJ had been administratively exhausted, it states no claim for relief under § 1983.

(2) Denial of Work Opportunities

In claims 7 through 37 and 43, plaintiff alleges that he was denied participation in the work release program at RRJ and to be "self employed" while incarcerated. Again, even if these claims had been administratively exhausted, they would state no claim for § 1983 relief. It is well established that prisoners have no constitutional right to job opportunities while incarcerated. Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980); Awalt v. Whalen, 809 F. Supp. 414, 416-17 (E.D. Va. 1992) (prisoners do not have a constitutionally-protected right to work while incarcerated, or to remain in a particular job once assigned). A prisoner has no constitutionally-protected liberty interest in any particular job assignment or work detail. Johnson v. Knable, 862 F.2d 314, 1988 WL 119136, **1 (4th Cir. 1988) (table) ("[P]rison work assignments are matters within the discretion of prison officials, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate."); Olim, 461 U.S. at 250. "[T]he classifications and work assignments of prisoners ... are matters of prison administration, within the discretion of the prison administrators...." Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir.), cert. denied, 435 U.S. 1009 (1978); accord, Mitchell v. Murray, 856 F. Supp. 289, 293 (E.D. Va. 1994). Therefore, taking as true plaintiff's allegations concerning denial of opportunities to be self-employed or to participate in RRJ's work release program, no claim for relief under § 1983 has been stated.

(3) Disciplinary Proceedings

In claims 37 - 40, plaintiff claims that he was removed from the work release program

after receiving a "vague and bogus" disciplinary charge. He had a disciplinary hearing five days later, at which he was not allowed to call or question witnesses or examine evidence. He thereafter was removed from the work release program. Am. Compl. at 26. Taking these allegations as true, plaintiff states no claim for § 1983 relief. A prison regulation creates a liberty interest and implicates federal due process protections only where the regulation imposes upon the inmate conditions which dramatically depart from the expected conditions of his indeterminate sentence. Sandin v. Conner, 515 U.S. 472 (1995). Plaintiff's ineligibility to participate in work release clearly does not depart from the expected conditions of plaintiff's sentence. See Altizer v. Paderick, 569 F.2d 812 (4th Cir. 1978) (holding that plaintiff who was removed from an institutional position as an inmate counselor was not entitled to due process). In Altizer, the Fourth Circuit emphasized the fact that work assignments of prisoners in state institutions are within the discretion of prison administrators. Id. at 813; see also Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991) ("Under Virginia law, work release, furlough and parole are all characteristically discretionary programs in which . . . [plaintiff] could acquire no entitlement."). Since plaintiff has no protected liberty interest in participating in work release, he had no entitlement to due process protections in connection with institutional decisions regarding his placement *vel non* in such a program.

At claims 65 - 67, plaintiff claims that his right to due process was violated in connection with a second disciplinary proceeding which ensued after he objected to being presented with an invoice for medical services. In that instance, plaintiff was placed in isolation for ten (10) days. He alleges that he spent three days in isolation before he received the unspecified disciplinary charge, and he was only given 15 minutes notice before the hearing began, which allegedly

9

violated RRJ's handbook. Plaintiff further asserts that he was not allowed to have representation, review the evidence, or call or confront witnesses. Am. Compl. at 44. It is well established that the failure of prison officials to follow their own established procedures, without more, does not rise to the level of a constitutional violation. See Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990). Here, then, to the extent that plaintiff alleges violations of RRJ policies, he has not stated a due process claim for the purposes of § 1983. Additionally, plaintiff does not allege that he lost good time credits as the result of the disciplinary proceeding, such that he was "entitled to advance written notice of the claimed violation, as well as a written statement concerning the evidence relied upon and the reasons for the disciplinary action taken." Brown v. Braxton, 373 F.3d 501, 504 (4th Cir. 2004). Regardless, however, plaintiff admits that he did receive notice and "charge papers" prior to the hearing. Am. Compl. at 44. And, contrary to plaintiff's apparent understanding, "inmates are not entitled to confront the witnesses against them, nor are they guaranteed the right to retained or appointed counsel." Id. at 504-05. An inmate has only a "qualified right 'to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 505 (quoting Wolff v. McDonnell, 418 U.S. 539, 566 (1974)), but prison officials have the discretion to keep the hearing within "reasonable limits," to refuse witness requests, and to limit access to collect statements or to compile other documentary evidence. Wolff, 418 U.S. at 566. Here, then, plaintiff's allegations that he was denied representation, the opportunity to review the evidence, and the ability to call or confront witnesses fail to state a claim for violation of his federal due process rights.

(4) Harassment and Verbal Abuse

In claims 41 - 43 and 47 - 49, plaintiff claims harassment by Officer Richardson, Sgt. Roni and Sgt. Coleman. The nature of the alleged harassment is not clearly articulated, except that defendants are alleged to have "loudly and verbally abuse[d]" plaintiff for requesting grievance forms. Am. Compl. at 33. However, it is settled that verbal harassment and abuse not rise to the level of a constitutional claim under §1983. See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). "[T]he use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis of a §1983 claim." Keyes v. City of Albany, 594 F.Supp. 1147 (N.D.N.Y. 1984). Only when a verbal threat is combined with action apparently designed to carry out the threat can it constitute a claim of constitutional dimension, Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978), but no such circumstances have been alleged here. Thus, even if plaintiff had completed administrative exhaustion of his claim of harassment and verbal abuse, no claim cognizable under § 1983 has been stated.

(5) Denial of Medical Care

In claims 45 - 46 and 52 - 64, plaintiff alleges that defendants were deliberately indifferent to his medical needs. To state a cognizable Eighth Amendment claim for denial of medical care, plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). Thus, plaintiff must first allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to

that serious medical need. Under this second prong, an assertion of mere negligence or even malpractice is not enough; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). The prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted). Significantly, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

None of the three instances plaintiff describes here are sufficient to meet these criteria. Plaintiff alleges first that on November 25, 2010, he complained to Nurse Johnson that he was experiencing shortness of breath "due to a 40 year battle with asthma." Nurse Johnson examined plaintiff, listened to his lungs, and denied him his breathing treatment. Am. Compl. at 31, 42. Because the nurse admittedly examined plaintiff in response to his complaint, plaintiff cannot show that she was deliberately indifferent to his condition, and the fact that she thereafter denied plaintiff's requested breathing treatment amounts to no more than a disagreement between plaintiff and the nurse over the appropriate course of treatment. Thus, no claim for deliberate indifference has been stated. Wright, 766 F.2d at 849.

Plaintiff further contends that on December 28, 2010, he submitted an inmate request to get his daily asthma medication refilled, and Nurse Johnson replied that the refill had been done, although plaintiff had not received it. Am. Compl. at 40. On January 12, 2011, plaintiff submitted a medical request form to have his emergency asthma medication refilled because he had only four days' worth of medicine left, and on January 19 Nurse Baker responded that the

inhaler had been refilled the previous day. Am. Compl. at 40. Plaintiff allegedly had not received the medication by January 20. Am. Compl. at 41. Taken as true, these allegations satisfy neither component of a viable Eight Amendment claim.

Plaintiff next alleges that on November 2, 2011, he submitted an inmate request stating that he needed immediate medical attention because his "blood sugar levels were out of control," allegedly due to the "high starch content" of the diet he received at RRJ. Am. Compl. at 35. Nurse Johnson replied that plaintiff was receiving accuchecks and protocol was being followed. Id. Plaintiff filed another inmate request for help with his high blood pressure on November 21, stating that he needed medication and possible medical attention "NOW!" Am. Compl. at 37. On November 23, Nurse Johnson responded that plaintiff had been placed on a five-day blood pressure check and that his request about his cholesterol had been forwarded. Id. Also on November 21, plaintiff submitted an inmate medical request for a diabetic diet, but instead he was "put on (fluid) medication without an examination or explanation." Am. Compl. at 38. Plaintiff submitted inmate requests to "get an explanation from the doctor why he ... prescribed the medication that he did" on December 16 and again on December 21, and he alleges that "the prescribing of medication without consulting or examining" him violated his Eighth Amendment rights. Am. Compl. at 39. Although plaintiff saw the doctor on December 21, he did not receive the results of his blood test, which he also characterizes as "an unnecessary and unwarranted violation" of his Eighth Amendment rights. Id. Again, none of these allegations, either alone or in concert, is sufficient to satisfy the elements of a viable Eighth Amendment claim, cf. Estelle, 429 U.S. at 105, so even if plaintiff had exhausted his claims administratively, they still would be subject to dismissal pursuant to § 1915A.

Lastly, included within plaintiff's claims of deliberate indifferent are references to his being charged $15 for a doctor's visit and medication. Am. Compl. at 44. Upon being presented with the invoice, plaintiff told Nurse Johnson that he thought she was "joking," and after plaintiff requested a copy of the invoice the nurse called for officer assistance. Id. If plaintiff intends to argue that the medical charges violated his Eighth Amendment rights, he has stated no claim for § 1983 relief. There is no constitutional requirement that jails provide medical care free of cost. Reynolds v. Wagner, 128 F.3d 166, 173 - 74 (3d Cir. 1997). Inmates may be constitutionally required to pay for own medical expenses, Roberson v. Bradshaw, 198 F.3d 645 (8th Cir. 1999), and there is no basis for a due process claim where deductions are taken from prisoner accounts for value received. Jensen v. Klecker, 648 F.2d 1179, 1183 (8th Cir. 1981). Here, where plaintiff admits that he took the medication prior to being presented with an itemized invoice for it, Am. Compl. at 44, it is apparent that no constitutional claim will lie.

(6) Mail

In claims 50 - 51, plaintiff alleges that Officer Upton read plaintiff's incoming mail on February 20, 2011. Plaintiff submitted an inmate request to get a grievance form to file a complaint against Upton, and received a reply from Sgt. Coleman stating that she had spoken with Officer Upton who said that he "followed procedure and inspected the book in the plaintiff's presence." Am. Compl. at 35. It is well established that prison officials may view a prisoner's legal mail only in the presence of the prisoner. See Wolff v. McDonnell, 418 U.S. 539 (1974). However, this prohibition applies only to mail clearly marked as confidential communication from a prisoner's attorney. Id. at 575. Furthermore, a merely negligent act of mail opening, rather than a pattern or practice of opening mail, does not rise to the level of a

14

constitutional violation. Bryant v. Winston, 750 F. Supp. 733 (E.D. Va. 1990) (citing Averhart v. Shuler, 652 F. Supp. 1504 (N.D. Ind.), aff'd, 834 F.2d 173 (7th Cir. 1987), cert. denied, 484 U.S. 1073 (1988)). Here, plaintiff does not allege that the mail Officer Upton read was clearly marked as confidential communications from his attorney - indeed, he does not allege that the mail was legal in nature, and the fact that he describes it as a "book" would seem clearly to imply that it was not. Moreover, plaintiff alleges no facts to suggest that the isolated incident he describes was part of a pattern or practice, or that it was due to anything more than negligence. Accordingly, even if plaintiff's claim regarding his mail had been exhausted, plaintiff states no claim of constitutional dimension remediable in § 1983.

### IV. Conclusion

For the foregoing reasons, the amended complaint will be dismissed pursuant to 42 U.S.C. § 1997e(a) for plaintiff's failure to exhaust his claims, and in the alternative pursuant to 28 U.S.C. § 1915A for failure to state claim. Plaintiff's application to proceed in forma pauperis will be denied, as moot. An appropriate Order shall issue.

Entered this 12th day of March 2013.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia